UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RANDI-LYN DAVIS, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| *v.* | )    *No. 1:14-cv-343-JHR* |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     *Defendant* | ) |

*MEMORANDUM DECISION*[1]

The plaintiff in this Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal contends that the administrative law judge assigned her a residual functional capacity ("RFC") that was not supported by substantial evidence in either its physical or its mental assessments, and that the testimony of the vocational expert was fatally flawed. I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.150, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act for purposes of SSD only through June 30, 2010, Finding

---

[1] This action is properly brought 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 12, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 16.

1, Record at 12; that she suffered from asthma, right shoulder impingement, an affective disorder, and an anxiety-related disorder, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 12-13; that she retained the RFC to perform light work, except that she could not climb ladders, ropes, or scaffolds, could not push or pull with the right upper extremity, could climb stairs or ramps, balance, stoop, kneel, crawl, or crouch only occasionally, could not work overhead with the right upper extremity, could not reach or handle more than frequently with the right upper extremity, could not work in concentrated exposure to extreme temperatures, humidity, fumes, odors, dust, gases, poor ventilation, etc., could only understand, remember and carry out simple, repetitive instructions, and could not work with the general public, work in close proximity with groups of more than six, or adapt to other than routine changes in the work setting, Finding 5, *id*. at 15; that she was unable to perform any past relevant work, Finding 6, *id*. at 23; that, given her age (30 on the date of alleged onset of disability), at least high school education, work experience, and RFC, use of the Medical-Vocational Rules in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id*. at 23-24; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset, September 1, 2008, through the date of the decision, March 28, 2013, Finding 11, *id*. at 25.  The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Physical RFC

The plaintiff contends that the administrative law judge included in her RFC physical limitations that were not supported by medical opinion "or other evidence," and which must therefore have been based on her own, improper lay assessment of the medical evidence. Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 11) at 5. She faults the administrative law judge for failing to describe how she derived each of the specific components of the physical RFC from specific sources in the record. *Id*. at 5-6.

The two decisions of this court cited by the plaintiff in support of this argument, however, do not require that level of detail in an administrative law judge's opinion. Neither requires that an administrative law judge explain how each of the components of an assigned RFC was drawn

from a specific source in the record.[2] In *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527 (D. Me. June 29, 2010), the administrative law judge supportably rejected an RFC opinion by the plaintiff's retained expert, leaving no other expert RFC opinion in the record that "she could conveniently adopt as her own[,]" and, while it was possible that she had derived the components of her RFC from other sources in the record, her failure to explain how she had done so led to remand. *Id*. at *3-*4. In *Seymour v. Barnhart*, No. 02-197-B-W, 2003 WL 22466174 (D. Me. Oct. 31, 2003), there was only one mental RFC assessment in the record, and the administrative law judge did not state whether he rejected it or chose from it to craft an RFC. Because the "substantiality of the evidence supporting the commissioner's Step 5 finding hinged on the accuracy of the data transmitted via hypothetical questions to the vocational expert[,]" the court remanded for reconsideration of the mental RFC. *Id*. at *4.

The plaintiff identifies only her shoulder impairment, found to be severe by the administrative law judge, Record at 12, as an instance in which she alleges that the administrative law judge "simply crafted the physical components of her RFC finding from whole cloth." Itemized Statement at 6-7. The RFC assigned to the plaintiff by the administrative law judge included limitations of inability to perform work that required her to push or pull with the right upper extremity, or to work overhead with the right upper extremity. Record at 15. The administrative law judge noted that the plaintiff "testified that she . . . had difficulty reaching with and using her right upper extremity." *Id*. at 17. She added:

> The claimant alleges that her ability to work is limited by a right shoulder impairment. The record reveals that she did injure the shoulder in June 2009 and had a grade I, borderline grade II shoulder separation. Her symptoms were thought to be excessive compared to the objective findings. After an MRI revealed arthropathy in the right shoulder, she was

---

[2] To the extent that the plaintiff means to contend that a formal physical RFC completed by a medical source must be in the record in order for an administrative law judge to assign a physical RFC to a claimant, she is incorrect. *See, e.g., Jackson v. Colvin*, Civil Action No. 13-00006-B, 2014 WL 1315662, at *6-*7 (S.D. Ala. Mar. 28, 2014).

4

> assessed as having an impingement syndrome in the right shoulder although examinations and films provided no evidence of radiation into the right upper extremity and she was found to be neurovascularly intact. Despite the dearth of strong objective findings by films or examinations by multiple practitioners, the claimant underwent surgery on February 26, 2010.
>
> Treatment notes from her primary care physician at Sebasticook Family Doctors in August 18, 2010 reveal that the claimant reported only intermittent aching pain in the shoulder although it was allegedly worsening. The claimant had alleged the pain was aggravated by movement and pushing and relieved by rest. Associated symptoms allegedly included decreased mobility, difficulty going to sleep, instability, night pain, night-time awakening, tenderness and weakness. However, she denied bruising, crepitus, limping, numbness, popping, spasms, swelling and tingling in the arms. The undersigned notes that this description of her shoulder pain is the same as those provided since February 23, 2010, just prior to her surgery. Thus, the description appears to be merely a carryover notation from the earlier dated that was not changed to reflect the claimant's actual later allegations following surgery. Even if the description of her allegations did reflect ongoing difficulty, examination revealed no signs of impairment, objective or otherwise. Although tenderness was found in September 2010, it was not found during an examination in October 2010. The record contains no later treatment notes regarding the claimant's physical complaints until July 2012 . . . . The undersigned also notes that active medications did not include any opiates or other pain medications after September 2010 until July 2012, some[]time after the claimant moved and obtained a new primary care practitioner. The treatment notes after October 2010 contain no reports that signs of impairment in the shoulder, objective or otherwise, were observed. The absence of any treatment notes or pain medication from September 2010 to July 2012 and the absence of any observed signs of impairment after October 2010 weighs heavily against the claimant's credibility.

*Id*. at 19. For the period after July 2012, the administrative law judge noted:

> The claimant transferred her primary care to Northwoods Healthcare in June 2012. The claimant's shoulder impairment and pain medications were not mentioned during the intake report. However, on July 24, 2012 the claimant sought night-time pain medication for her right shoulder that was allegedly still painful to sleep on after orthopedic surgery. Although examination revealed no signs of impairment, objective or otherwise, the examining nurse practitioner prescribed hydrocodone. The nurse practitioner's report indicates that she believed she was only renewing

5

> medication prescribed by the claimant's prior primary care practitioner as she stated that she would "continue" the prescription.
>
> Later treatment notes at Northwoods Healthcare reveal that the claimant continued to complain of shoulder pain, that examinations continued to reveal no signs of impairment, and that hydrocodone continued to be prescribed. The practitioner even doubled the dosage of hydrocodone on August 22, 2012. Although the claimant was advised on December 5, 2012 that another mode of pain treatment was appropriate and was referred to a physical therapist, hydrocodone continued to be prescribed. . . . The indications of symptom magnification . . . , the claimant's request for hydrocodone from a new primary care practitioner after being discontinued by her former primary case practitioner almost two years earlier, and [another factor] all suggest drug seeking behavior[.]
>
> The record contains no later treatment notes.

*Id*. at 19-20. The administrative law judge then concluded:

> The above summary of the medical reports dealing with the claimant's physical complaints reveals that the claimant has mild asthma and, since June 2009, a relatively mild shoulder disorder that caused relatively mild functional difficulties and improved after surgery in February 2010. No medical practitioner of record has expressed an opinion regarding the claimant's physical functional capacity. However, based on her allegations in 2011 regarding her activities, the absence of any signs of physical impairment [or] shoulder impairment after April 2010 . . . and the treatment notes that indicate that the claimant is far more functional tha[n] she alleged to the Social Security Administration, it may reasonably be inferred that the claimant recovered well from her surgery and she is able to perform at least light work. To give her the benefit of any doubt, the undersigned finds that [her] physical limitations are as delineated in the above residual functional capacity assessment.

*Id*. at 20 (citations omitted).

The plaintiff asserts that "there was no evidence suggesting that the shoulder impairment precluded only *overhead* work or would still allow her to engage in *frequent* reaching." Itemized Statement at 7 (emphasis in original). However, the important point here is that the plaintiff does not point to any evidence that there was any further limitation on her ability to use her right upper extremity, and the burden of proof rests with the claimant through the establishment of an RFC.

6

*Gonsalves v.* Astrue, Civil No. 09-181-BW, 2010 WL 1935753, at *6 (D. Me. May 20, 2010). Here, the administrative law judge thoroughly reviewed the available evidence concerning the alleged impairment of the plaintiff's right shoulder and considered her testimony as well, albeit discounted somewhat, as the administrative law judge explained, for doubts about the plaintiff's credibility. The plaintiff has not challenged the administrative law judge's evaluation of her credibility.

I conclude, therefore, that the administrative law judge, in giving the plaintiff "the benefit of any doubt," assigned her an RFC containing limitations on the use of her right upper extremity that exceeded any that the medical evidence could support. "[T]he long-standing rule of Social Security law in this district [is] that a claimant may not obtain a remand on the basis of an RFC that is more favorable to him or her than the evidence would otherwise support." *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014). *See also Gonsalves*, 2010 WL 1935753, at *6 ("It is true that the administrative law judge's opinion does not provide any analysis of medical evidence to support [the limitation at issue], but that error can only be read, given the state of the record, to be favorable to the plaintiff, assigning him a more restricted residual physical capacity than . . . is justified by the medical evidence.").

It may well be "imperative that Ms. Davis' abilities to reach and handle be *accurately* assessed[,]" Itemized Statement at 7 (emphasis in original), but the burden to provide the administrative law judge with the necessary evidence to allow her to do so rests with the plaintiff. So long as the administrative law judge assigns a claimant an RFC with restrictions more favorable to her claim than the available evidence will support, such an error is not grounds for remand.

## B. Mental RFC

The plaintiff makes the same argument with respect to the mental RFC assigned to her by the administrative law judge. She asserts that the administrative law judge rejected the opinions of her treating nurse practitioner, the consulting examiner, and the state-agency psychologist reviewers "except to the extent that they matched her own lay assessment." *Id*. at 7. She contends that the administrative law judge committed reversible error by rejecting "medical opinion" because it is based on the plaintiff's allegations, which the administrative law judge found to be not entirely credible. *Id*. at 8-9.

The plaintiff's basic premise is incorrect. The administrative law judge did not reject the opinions of the consultant or those of the state-agency reviewers. Saying that these opinions "are not credited to the degree they vary from the above delineated residual functional capacity assessment by the undersigned[,]" Record at 23, does not, as the plaintiff would have it, mean that the administrative law judge first "delineated" a complete mental RFC on her own, rejecting all of the expert medical opinion in the record, and then stated that she "credited" them where they happened to agree with her wholly independent opinion. The quoted sentence is a variant of one that appears in almost every opinion issued by an administrative law judge that is reviewed in this court.

The administrative law judge noted that David Booth, Ph.D., the psychologist who evaluated the plaintiff at the request of Maine Disability Determination Services, "observed no significant signs of impairment in thought process, memory, judgment, insight, or intelligence." *Id*. at 20. She also noted that Dr. Booth "set global assessment of functioning at 60, indicating a belief that the claimant had only moderate, almost mild, symptoms and/or functional limitations." *Id*. at 21. She stated that "none of Dr. Booth's opined difficulties are inconsistent with the residual

functional capacity assessment delineated" in her findings. *Id*. This is far from a rejection of Dr. Booth's opinions.

The administrative law judge's remarks about the report of Philip Walls, M.D., a psychologist-reviewer for the state agency, included the observations that he opined that the plaintiff

> would have marked limitation in ability to interact with the public . . . . [T]he claimant could perform work involving only simple tasks and changes in routine and no more than superficial contact with coworkers. He opined that the claimant would be able to accept supervision.

*Id*. Again, none of this is inconsistent with the mental RFC that the administrative law judge assigned to the plaintiff.

The administrative law judge noted that Robert Maierhofer, Ph.D., another psychologist-reviewer, "opined that the claimant could perform work involving only simple tasks and changes in routine and only small groups of coworkers. He opined that the claimant would be able to accept supervision." *Id*. (citation omitted). This is also consistent with the mental RFC assigned to the plaintiff by the administrative law judge. The administrative law judge even found parts of the opinion of Laurie Mahar, NP, the plaintiff's psychiatric practitioner, to be consistent with aspects of the RFC that she assigned to the plaintiff, noting that Ms. Mahar set global assessment of functioning at 55, "indicating a belief that the claimant had only moderate symptoms and/or functional limitations." *Id*. at 22. She also noted the plaintiff's testimony that she could tolerate groups of three or four people. *Id.*

Thus, it is clear that the administrative law judge did not "reject[] each and every medical opinion in the record[.]" Itemized Statement at 8. The plaintiff's arguments against this straw man cannot provide a basis for remand. Nor did the administrative law judge "substitute her adverse credibility analysis for positive medical evidence to support her RFC." *Id*. at 9. The

plaintiff has not shown that the administrative law judge's mental RFC "lacked adequate support" in the record. *Id*. at 7.

For these reasons, it is unnecessary to parse the "legal errors" with which the plaintiff alleges that the administrative law judge's discussion of Ms. Mahar's records and completed questionnaire are "riddled." *Id*. at 8. I do note, however, that the three such errors specifically mentioned by the plaintiff, that Ms. Mahar is not an acceptable medical source, that she did not have first-hand knowledge, and that the RFC is supported by "inconsistencies" in the plaintiff's allegations, *id*. at 8-9, present an incomplete picture of that discussion. The administrative law judge also stated that the questionnaire was "entirely inconsistent with treatment notes by Ms. Mahar and all other practitioners of record"; was "inconsistent with Ms. Mahar's global assessments that are generally set at 55": and was "also inconsistent with the claimant's own testimony that she could tolerate groups of three or four people[.]" Record at 23. The plaintiff does not challenge any of these statements.

### C. Step 5

The plaintiff contends that "the record lacks substantial support for the Step 5 finding." Itemized Statement at 10. Specifically, she asserts that the vocational testimony upon which the finding was based "was irreparably compromised by the ALJ's flawed RFC hypothetical question, which was based on the ALJ's lay interpretation of the raw medical data—as explained in detail above." *Id*. I have rejected the assertion that the administrative law judge relied upon any lay interpretation of raw medical data, so this derivative argument cannot succeed.

In addition, the plaintiff challenges the administrative law judge's reliance on the job of surveillance system monitor identified by the vocational expert, because the vocational expert testified that there were only 9,500 of these jobs in the country. *Id*. at 11. Acknowledging this

10

court's holding in *Vining v. Astrue*, 720 F.Supp.2d 126 (D. Me. 2010), that 10,000 to 11,000 jobs in the nation were sufficient to establish the existence of a significant number of jobs for purposes of 20 C.F.R. §§ 404.1566 and 416.966, 720 F.Supp.2d at 136, the plaintiff nonetheless argues that 9,500 jobs nationally is less than .000091 percent of the jobs in the nation, and, therefore, cannot be a "significant" number of jobs. Itemized Statement at 11. She cites only *Beltran v. Astrue*, 700 F.3d 386 (9th Cir. 2012), in support of this argument.

In that opinion, the Ninth Circuit held that 1,680 jobs nationally did not represent a significant number for Social Security purposes. *Id*. at 390. It said nothing at all about any higher number. It is not necessary to address this argument further, in any event, because the vocational expert also listed the jobs of marker and addresser in response to the administrative law judge's hypothetical question, Record at 25, which the plaintiff does not challenge, making it irrelevant whether the administrative law judge could rely on the job of surveillance system monitor.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 25th day of June, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge